**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**FRANK RUGGIREO,**

                                        **Plaintiff,**

          **vs.**                                                    **5:05-CV-1179**
                                                                     **(NAM/RFT)**

**MICHAEL J. ASTRUE*,**
**COMMISSIONER OF SOCIAL SECURITY,**

                                        **Defendant.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

McMahon, Kublick & Smith, P.C.            Jennifer Gale Smith, Esq.
500 South Salina Street
Syracuse, New York 13202
_Attorney for Plaintiff_

Andrew T. Baxter                         William H. Pease, Esq.
Acting United States Attorney for
the Northern District of New York
P.O. Box 7198
100 South Clinton Street
and
Office of General Counsel                Barbara Spivak, Esq.
Social Security Administration           Sheena V. Barr, Esq.
26 Federal Plaza
New York, New York 10278
_Attorney for Defendant_

          ** On February 12, 2007, Michael J. Astrue was sworn in as Commissioner of the Social
          Security Administration.  Pursuant to Federal Rule of Civil Procedure 25(d)(1), he is
          automatically substituted for former Commissioner Joanne B. Barnhart as the defendant in
          this action.

**NORMAN A. MORDUE, Chief U.S. District Judge:**

                    **MEMORANDUM-DECISION AND ORDER**

**I.       INTRODUCTION**

          Plaintiff Frank Ruggireo brings the above-captioned action pursuant to 42 U.S.C. §§

405(b) and 1383(c)(3) of the Social Security Act, seeking review of the Commissioner of Social Security's decision to deny his application for disability insurance benefits ("DIB").  (Dkt. No. 1). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## II.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on August 30, 2004. (Administrative Transcript at p. 51).[1]  The applications were denied on October 5, 2004.  (T. 26).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on May 2, 2005.  (T. 42).  On July 22, 2005, ALJ Elizabeth W. Koennecke issued a decision denying plaintiff's claim for benefits. (T. 14-21).  The Appeals Council denied plaintiff's request for review on August 16, 2005, making the ALJ's decision the final determination of the Commissioner. (T. 5).  This action followed.

## III.    FACTUAL BACKGROUND

Plaintiff was born on December 30, 1965 and was 39 years old at the time of the administrative hearing on May 2, 2005. (T. 51, 305).  Plaintiff lives with his wife and two stepchildren.  (T. 312).  Plaintiff has two daughters, ages 16 and 10, who visit every other weekend. (T. 312-313).  Plaintiff has an 11th grade education. (T. 305).  In June 2000, plaintiff received ASC certification in trucking equipment from a vocational school. (T. 80).

From 1984 until 2004, plaintiff was employed by various companies as a tractor trailer driver/mechanic. (T. 85-86).  Plaintiff's job duties as a mechanic required him to frequently lift and carry less than 10 pounds; walk for 7 hours; stand for 7 hours; sit for ½ hour; climb, kneel,

---

[1] Portions of the administrative transcript, Dkt. No. 7, will be cited herein as "(T___)."

2

crouch and crawl for 2 hours; and grasp and stoop for 6 hours.  (T. 82).  As a driver of an 18-wheeler, plaintiff was required to drive 300-400 miles each day and to lift and carry less than 10 pounds. (T. 83).

Plaintiff was not employed in any capacity from February 11, 2004 until April 2005.  (T. 307).  Plaintiff alleges that he became disabled on February 11, 2004 due to a herniated disc at L5-S1 and right radiculopathy. (T. 15).  On April 18, 2005, plaintiff returned to work as a mechanic.[2] (T. 303).  During the hearing, plaintiff testified that his job required him to "lay down on a dolly for 5 to 6 hours" of the workday. (T. 315).  Plaintiff testified that his responsibilities include changing tail lights, tires and brakes and performing inspections on tractor trailers. (T. 310).  Plaintiff stated "[j]ust about anything a tractor trailer has, I can fix."  (T. 310).  The ALJ determined that the period of time at issue in this case is February 11, 2004 through April 17, 2005.[3]  (T. 16).

## A.    Medical Treatment

Plaintiff was treated for his alleged disabling conditions by Bruce Silverstein, M.D., John Cambareri, M.D., Martin A. Schaeffer, M.D., Mahender R. Goriganti, M.D. and Warren Wulff, M.D.  Plaintiff received treatment from SUNY Health Science Center, Meridian Chiropractic & Wellness, Academy Physical Therapy Clinic and CNY Physical Therapy & Aquatic Centers.

SUNY Health Science Center

On February 11, 2004, plaintiff was treated at the emergency room of SUNY Health Science Center. (T. 109).  Plaintiff arrived via ambulance and complained of neck and back pain

[2] The record does not contain the name of plaintiff's employer in April 2005.

[3] Plaintiff does not object to this portion of the ALJ's decision.

as a result of a motor vehicle accident. (T. 109).  Upon examination, the attending physician noted

that plaintiff exhibited limited range of motion due to back pain and tenderness over the lumbar

area. (T. 110).  X-rays of plaintiff's cervical and lumbar spine were negative. (T. 110).  Plaintiff

was discharged with a prescription for Lortab and advised to follow with his primary care

physician.[4] (T. 110).

Bruce Silverstein, M.D.

On February 15, 2004, plaintiff treated with Dr. Bruce Silverstein, his primary care

physician, for complaints of pain, stiffness and spasm. (T. 120).  Upon examination, Dr.

Silverstein found spasms present in plaintiff's cervical, thoracic and lumbar spine. (T. 120).  Dr.

Silverstein noted "flex 0/ext 0 and DTR 2x".[5]  (T. 120).  Dr. Silverstein prescribed Motrin, Lortab

and Skelaxin and advised plaintiff to return "this week".[6] (T. 12).  On February 19, 2004 and

February 26, 2004, plaintiff returned for follow up appointments with Dr. Silverstein. (T. 121).

Dr. Silverstein's diagnosis and treatment were unchanged. (T. 121).  On March 8, 2004, plaintiff

complained that his back pain was "worse" and complained that the pain was "sharp and

stinging". (T. 122).  Dr. Silverstein's examination findings were unchanged.  (T. 122).  Dr.

Silverstein suggested a "pmr consult asap" and advised plaintiff to return in one month. (T. 122).

On March 29, 2004, plaintiff appeared for a re-evaluation and complained of "no

_____

[4] Lortab is a semisynthetic opioid analgesic derived from codeine but having more powerful sedative and analgesic effects.  *Dorland's Illustrated Medical Dictionary*, 890, 1090 (31st ed. 2007).

[5] DTR is a medical abbreviation for deep tendon reflex.  Medilexicon, http://www.medilexicon.com/medicaldictionary (last visited May 14, 2008).

[6] Motrin is a nonsteroidal antiinflammatory drug used in the treatment of pain, fever, dysmenorrhea, osteoarthritis, rheumatoid arthritis, and other rheumatic and nonrheumatic inflammatory disorders. *Id*. at 928, 1201. Skelaxin is a centrally acting skeletal muscle relaxant used in the treatment of painful musculoskeletal conditions. *Id*. at 1163, 1748.

improvement" with his low back pain. (T. 231).  Upon examination, Dr. Silverstein found "+ spasm csp/lsp and DTR 2x".  (T. 231). Dr. Silverstein advised plaintiff to discontinue Lortab and prescribed OxyContin.[7] (T. 231).  Plaintiff had 11 additional visits with Dr. Silverstein until January 28, 2005.  During these visits, Dr. Silverstein's examination and diagnosis of plaintiff was unchanged. (T. 231-235).  On January 28, 2005, plaintiff advised Dr. Silverstein that his pain was improved with surgery. (T. 236).  Dr. Silverstein noted "flex 0/ext 0 and DTR 2x" and diagnosed plaintiff with "LSS".  (T. 236).

On March 15, 2005, Dr. Silverstein completed a Medical Source Statement of Ability To Do Work-Related Activities (Physical). (T. 227).  Dr. Silverstein opined that plaintiff could occasionally and frequently lift and/or carry less than 10 pounds; stand and/or walk less than 2 hours in an 8 hour workday; must alternate between sitting and standing; and was unable to push/pull due to back injury.  (T. 228).  Dr. Silverstein noted plaintiff was unable to perform these tasks due to a back injury and unable to flex or extend due to spasms. (T. 228).

Meridian Chiropractic & Wellness, P.C.

On February 23, 2004, plaintiff had an initial consultation with Elaina A. Pirro-Lombardi, D.C., upon referral by Dr. Silverstein. (T. 123).   Dr. Pirro-Lombardi noted that plaintiff complained of back pain as a result of a motor vehicle accident.  (T. 123).  Upon examination, Dr. Pirro-Lombardi found a restriction in range of motion in the lumbar spine, positive straight leg raising at 20 degrees on the right and 35 degrees on the left, and palpable pain with severe spasm and tenderness over the lumbar region. (T. 123).  Dr. Pirro-Lombardi diagnosed plaintiff with an acute lumbar sprain/strain, a thoracic sprain/strain and noted "suspect lumbar disc

---

[7] OxyContin is an opioid agonist analgesic derived from morphine. *Dorland's* at 1377.

derangement/facet syndrome". (T. 123).   Dr. Pirro-Lombardi recommended that plaintiff receive

chiropractic manipulative therapy three to four times per week for two weeks. (T. 124).

On April 14, 2004, plaintiff underwent an EMG/NCV study administered by Dr. J. Donald

Dishman, D.C., a chiropractor specializing in chiropractic neurology.[8] (T. 125).  Dr. Dishman

noted that plaintiff's results were within normal limits with the exception of right S1

radiculopathy.[9] (T. 128).  Dr. Dishman recommended clinical correlation and suggested that

plaintiff continue chiropractic treatment. (T. 125).  Plaintiff continued to receive treatment at

Meridian until June 14, 2004. (T. 144).

John Cambareri, M.D.

On March 8, 2004, plaintiff was treated by Dr. Cambareri, an orthopedist affiliated with

Syracuse Orthopedic Specialists. (T. 145).  Plaintiff complained of neck and low back pain which

was more prevalent on the right side. (T. 145).  Upon examination, Dr. Cambareri noted that

plaintiff was in no acute distress, ambulated without a limp, had no motion in his back due to

pain, and exhibited tenderness over the lumbar spine with spasm.  (T. 145).  Dr. Cambareri found

positive straight leg raising on the right and negative on the left, motor strength of 5/5 in the

lower extremities and sensory exam intact. (T. 146).  Dr. Cambareri diagnosed plaintiff with low

back pain and sciatica and scheduled plaintiff for an MRI of the lumbar spine.[10] (T. 146).

_____

[8] An EMG (an electromyogram) is a record of electromyography which is a technique for recording the
extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation.
*Dorland's* at 609.

[9] Radiculopathy is a disease of the nerve roots.  *Id.* at 1595.

[10] Sciatica is syndrome characterized by pain radiating from the back into the buttock and into the lower
extremity along its posterior or lateral aspect, and most commonly caused by protrusion of a low lumbar
intervertebral disk; the term is also used to refer to pain anywhere along the course of the sciatic nerve.  *Dorland's* at
1703.

On March 11, 2004, an MRI was taken of plaintiff's lumbar spine at Dr. Cambareri's office. (T. 148).  Dr. Mark Franklin reviewed the study and found a small central dorsally protruding disk herniation at L5-S1 with minimal impingement on the ventral dural sac. (T. 148).

On March 18, 2004, plaintiff returned to Dr. Cambareri to discuss the results of the MRI. (T. 151).  Upon examination, Dr. Cambareri found tenderness in plaintiff's lumbar region, negative straight leg raising to 90 degrees bilaterally when seated, good motion at the hips and knees, motor strength of 5/5 in the lower extremities with sensory examination intact. (T. 152). Dr. Cambareri diagnosed plaintiff with a lumbar herniated disc with no myelopathy.[11] (T. 152). Dr. Cambareri discussed various options with plaintiff from "doing nothing to surgical". (T. 152). Dr. Cambareri noted that plaintiff was completely disabled from work until the next scheduled visit. (T. 152).

On April 29, 2004 and May 20, 2004, plaintiff returned to Dr. Cambareri complaining that his pain was aggravated by walking, sitting, lying down and climbing/descending stairs. (T. 154). Plaintiff advised that his pain was relieved by medication which included Lortab, Motrin, OxyContin and Skelaxin. (T. 154, 157).  Dr. Cambareri noted that the results of plaintiff's physical examination were unchanged from the prior examination with the exception of positive straight leg raising.  (T. 155, 158).  Dr. Cambareri agreed with the Dr. Franklin's interpretation of the MRI study and referred plaintiff for a physiatry consult.  (T. 158).

On June 24, 2004, plaintiff returned to Dr. Cambareri complaining that physical therapy made his pain worse. (T. 161).  Dr. Cambareri noted that plaintiff suffered from a small herniated disc that "does not impinge on the thecal sac according to the Radiologist". (T. 161).  Dr.

---

[11] Myelopathy is a functional disturbances or pathological change in the spinal cord, often referring to nonspecific lesions in contrast to the inflammatory lesions of myelitis.  *Id.* at 1239.

Cambareri suggested epidural blocks and electrodiagnostic testing. (T. 161-162).

On August 5, 2004, plaintiff returned to Dr. Cambareri stating that his back pain was worse despite receiving a nerve block. (T. 163).  Plaintiff advised Dr. Cambareri that aquatic therapy and physical therapy were "not helping" and that chiropractic treatment "was not of any benefit". (T. 164).  Dr. Cambareri diagnosed plaintiff with low back pain with radiculitis.[12] (T. 164).  Dr. Cambareri gave plaintiff the telephone number for VESID (vocational rehabilitation) and suggested that plaintiff continue with physical therapy. (T. 164).

On September 16, 2004, plaintiff returned to Dr. Cambareri with the same complaints of pain and was by referred by Dr. Cambareri to Dr. Wulff for an opinion. (T. 242).  On November 11, 2004, Dr. Cambareri noted that he reviewed Dr. Wulff's notes and concluded that plaintiff should continue to treat with Dr. Wulff. (T. 254).

Martin A. Schaeffer, M.D.

On June 15, 2004, plaintiff was evaluated by Dr. Martin A. Schaeffer, a board certified physician specializing in pain management.  (T. 186).  Plaintiff complained of pain in his low back with radiating pain to his right lower extremity. (T. 186).  Upon examination, Dr. Schaeffer noted that plaintiff was not in apparent distress, exhibited motor strength of 5/5 in upper and lower extremities, with sensory examination revealing light touch intact in upper and lower extremities. (T. 186).  Dr. Schaeffer found positive straight leg raising at 45 degrees on right and negative on left and tenderness with decreased forward flexion. (T. 186).  Dr. Schaeffer noted that plaintiff could perform a heel and toe walk with complaints of pain and that plaintiff ambulated slowly but was stable. (T. 186).  Dr. Schaeffer diagnosed plaintiff with acute low-back pain and

---

[12] Radiculitis is an inflammation of the root of a spinal nerve, especially of that portion of the root which lies between the spinal cord and the intervertebral canal.  *Dorland's* at 1595.

right lower extremity pain complaints with L5-S1 herniated disk and right lower extremity radiculopathy. (T. 187).  Dr. Schaeffer advised plaintiff to discontinue chiropractic treatments and to consider nerve blocks. (T. 187).  Dr. Schaeffer prescribed Celebrex and Elavil and advised plaintiff to return as needed.[13] (T. 187).

On June 24, 2004, plaintiff returned for a follow up visit with Dr. Schaeffer. (T. 188). Plaintiff stated that physical therapy aggravated his pain but that his medications were helpful to a varying degree. (T. 188).  Dr. Schaeffer's diagnosis of plaintiff was unchanged. (T. 188).  Dr. Schaeffer suggested an aquatic therapy program. (T. 188).

On July 15, 2004, plaintiff returned for a third visit with Dr. Schaeffer. (T. 189).  Plaintiff stated that he received his first injection from Dr. Goriganti but that it did not help. (T. 189).  Dr. Schaeffer opined that plaintiff should continue with aquatic therapy and consider additional injections to "finish out his current series". (T. 190).  Dr. Schaeffer noted that if plaintiff felt that injections, aquatic therapy and medications were not beneficial, he should consider surgery. (T. 190).  Dr. Schaeffer discharged plaintiff from his case. (T. 190).

<u>Academy Physical Therapy Clinic</u>

On June 16, 2004, plaintiff was evaluated by Vince Giardina, a physical therapist at Academy Physical Therapy. (T. 183).  Plaintiff presented with a "guarded gait" and complained of low back pain to the right hip area radiating to his leg and foot. (T. 183).  Mr. Giardina noted that plaintiff refused to complete testing for a mechanical evaluation. (T. 183).  Plaintiff was not able to continue with his session due to pain and therefore, Mr. Giardina noted that his evaluation

---

[13] Celebrex is a nonsteroidal antiinflammatory drug used for symptomatic treatment of osteoarthritis and rheumatoid arthritis.  *Id*. at 317.  Elavil is a tricyclic antidepressant; it is also used in the treatment of chronic pain. *Id*. at 64, 606.

was "inconclusive". (T. 183).  Plaintiff received five treatments at Academy. (T. 181-185).

<u>Mahender R. Goriganti, M.D.</u>

On June 29, 2004, plaintiff appeared for an initial evaluation by Dr. Goriganti for low back pain management at the request of Dr. Schaeffer.[14] (T. 198).   Dr. Goriganti noted plaintiff was in "good health in no apparent distress" and stated plaintiff was "comfortable seated on the examination table". (T. 198).  Dr. Goriganti found plaintiff's neurological examination, sensory examination, motor examination and coordination of upper and lower extremities to be "normal". (T. 198).  Dr. Goriganti's examination of plaintiff's lumbar spine revealed muscle spasm with decreased range of motion in every range and positive straight leg raising on the right at 45 degrees. (T. 198).  Dr. Goriganti noted that plaintiff did not bring MRI films or results of electrodiagnostic studies therefore, the impression was noted as "rule out lumbar radiculopathy". (T. 199).  Dr. Goriganti prescribed Elavil, Lortab and Motrin and noted "I will review him for epidural injections". (T. 199).

On July 13, 2004, plaintiff had a follow up visit with Dr. Goriganti.  (T. 200).  Dr. Goriganti noted a "history of significant improvement with the pain" but with pain in both lower extremities. (T. 200).  Upon examination, Dr. Goriganti found significant muscle spasm with decreased range of motion in plaintiff's lumbar spine and positive straight leg raising at 50 degrees. (T. 200).  Dr. Goriganti diagnosed plaintiff with lumbar radiculopathy and suggested an epidural steroid injection. (T. 200).  Dr. Goriganti administered the injection and noted that plaintiff tolerated the procedure well and was able to ambulate upon discharge. (T. 200).

On March 16, 2005, Dr. Goriganti completed a Medical Source Statement of Ability to Do

---

[14] The record does not indicate whether or not Dr. Goriganti was specialized in any area of medicine.

Work-Related Activities (Physical). (T. 222).  Dr. Goriganti opined that plaintiff could

occasionally lift and/or carry less than 10 pounds; could frequently lift and/or carry less than 10

pounds; could stand and/or walk less than 2 hours in an 8 hour workday; could sit but must

periodically alternate sitting and standing to relieve pain or discomfort; and was limited in

pulling/pushing in both lower and upper extremities. (T. 222-223).   Dr. Goriganti noted that

plaintiff demonstrated negative flexion and extension with positive spasms in his lumbar, thoracic

and cervical spine. (T. 223).  Dr. Goriganti opined that plaintiff could never climb, balance, crawl

or stoop but could occasionally kneel and crouch. (T. 223).

CNY Physical Therapy & Aquatic Centers

On June 30, 2004, plaintiff was evaluated by Kevin Gretsky, a physical therapist, at the

request of Dr. Schaeffer. (T. 204).  Mr. Gretsky noted that plaintiff was "agitated and hostile"

towards the evaluation process. (T. 204).  Mr. Gretsky diagnosed plaintiff with "neutral bias low

back pain, secondary to patient's failure to participate in the evaluation process". (T. 204).

Plaintiff received 18 treatments at CNY Aquatic Center from June until August 2004. (T. 209).

Plaintiff was re-evaluated on September 14, 2004. (T. 210).  Mr. Gretsky noted that plaintiff's

compliance was "good" but that plaintiff made "no progress". (T. 210).

Warren Wulff, M.D.

On September 29, 2004, plaintiff was evaluated by Dr. Wulff, another orthopedist

affiliated with Syracuse Orthopedic Specialists, for a "second opinion". (T. 244).  Dr. Wulff

opined that plaintiff exhibited "classic right S1 lumbar radiculopathy". (T. 245).  Dr. Wulff noted

that nerve conduction studies documented the radiculopathy but "the only problem is his MRI

scan 3/11/04 failed to document any neurocompressive lesions". (T. 245).  Dr. Wulff found that

plaintiff was able to balance and climb onto the examination table, exhibited a limited range of motion due to pain, with no tenderness on palpation of lumbar spine. (T. 245).  Dr. Wulff found plaintiff had 5/5 motor strength in his lower extremities, normal sensation, and straight leg raising that was markedly positive on the right and mildly positive on the left.  (T. 246).  Dr. Wulff diagnosed plaintiff with sciatica, which Dr. Wulff noted was "documented by EMG". (T. 246).  Dr. Wulff found no evidence of a herniated disc on the MRI scan and stated that was "quite confusing". (T. 246).  Dr. Wulff recommended an updated MRI and found plaintiff completely disabled from work. (T. 246).

On October 6, 2004, plaintiff returned to Dr. Wulff for the results of his MRI and a further evaluation. (T. 247).  Dr. Wulff found no changes in plaintiff's physical examination.  (T. 247).  Dr. Wulff noted that an MRI taken on October 1, 2004 showed no significant herniation or neuroforaminal compression on the right to account for his radiculopathy.  (T. 248).  Dr. Wulff opined that a desiccated L5-S1 disk with small posterior central herniation could possibly cause plaintiff's back pain but that it would not explain plaintiff's right leg complaints. (T. 248).  Dr. Wulff diagnosed with low back pain and recommended a lumbar diskogram to determine the source of his pain.[15] (T. 249).

On October 25, 2004, plaintiff underwent a diskogram performed by Dr. Kunz at St. Joseph's Hospital.[16] (T. 269).  On October 29, 2004, plaintiff returned to Dr. Wulff to review the results. (T. 250).  Dr. Wulff noted that the report indicated that the L5-S1 disk was "abnormal" with "severe discordant pain at that level and an annular leak". (T. 251).  Dr. Wulff noted that due

---

[15] A diskogram is a radiograph of an intervertebral disk.  *Dorland's* at 553.

[16] The record does not contain a report of the diskogram or any notes from Dr. Kunz.

to the discordant back pain, he was hesitant to consider surgery and suggested a back brace.  (T. 252).

On December 10, 2004, plaintiff returned for a follow up with Dr. Wulff. (T. 257).  Dr. Wulff noted that plaintiff received his brace and noted that "he loves wearing it.  His pain is significantly better when he wears it.  He is very happy with it."  (T. 257).  Plaintiff stated that his employer would not let him work with the brace and asked Dr. Wulff about surgical intervention. (T. 257).   Dr. Wulff noted that he was "more hopeful now that surgery would help" given plaintiff's "excellent response to bracing". (T. 257).  Dr. Wulff recommended a lumbar fusion at L5-S1. (T. 257).

Plaintiff underwent a lumbar fusion on January 3, 2005 performed by Dr. Wulff at Community General Hospital. (T. 285).   Plaintiff had two "unremarkable" post operative visits with Dr. Wulff in January and March 2005. (T. 265).    On April 5, 2005, plaintiff had his last visit with Dr. Wulff. (T. 298).  Dr. Wulff noted that plaintiff was "pleased" with the results and indicated that he would like to return to work as soon as possible. (T. 298). Dr. Wulff noted that plaintiff walked comfortably and stood tall and straight. (T. 298).  Dr. Wulff found that straight leg raising was negative and noted that plaintiff was able to easily climb onto the examining table. (T. 298).  Dr. Wulff diagnosed plaintiff with discogenic syndrome and opined that "I would be happy to return him to work next Monday without restriction.". (T. 298).

**B.      Consultative Examinations**

<u>Donald Cally, M.D.</u>

On March 17, 2004, plaintiff was examined by Dr. Cally, an orthopedist, at the request of Arrow Claims Service in relation to plaintiff's claim for No-Fault benefits. (T. 166).  Plaintiff

complained of discomfort in his neck and constant pain in his lower back. (T. 166). Plaintiff denied any numbness, tingling or radicular complaints. (T. 166). Upon examination, Dr. Cally noted that plaintiff's station and gait were normal with no tenderness to palpation. (T. 167). Dr. Cally noted that plaintiff was able to heel and toe stand, straight leg raising was negative bilaterally and forward flexion was limited to 20 degrees. (T. 167). Dr. Cally noted that he was not provided with any records for review. (T. 167). Dr. Cally diagnosed plaintiff with non-specific neck and low back pain. (T. 167). Dr. Cally opined that plaintiff could work his job as a mechanic on light or modified duty where he was not doing any repetitive heavy lifting, bending, pushing or pulling. (T. 167).

Ernest Nitka, M.D.

On March 18, 2004, plaintiff appeared for an examination with Dr. Ernest Nitka, a neurologist, at the request of Arrow Claims Services. (T. 170). Plaintiff complained of low back pain radiating into his leg and intermittent neck pain. (T. 171). Dr. Nitka's noted that he was not provided with any medical records to review. (T. 173). Dr. Nitka's neurological examination of plaintiff was unremarkable. (T. 171). Dr. Nitka noted that plaintiff could not return to work full duty until he received more definitive therapy. (T. 172). On March 24, 2004, Dr. Nitka prepared an addendum to his report and stated that plaintiff may work with restrictions of no lifting over 25 pounds and no repetitive bending or lifting. (T. 173). On April 2, 2004, Dr. Nitka prepared a second addendum after reviewing medical records and diagnosed plaintiff with lumbosacral radiculopathy. (T. 174).

On May 18, 2004, Dr. Nitka conducted a re-examination of plaintiff at the request of Arrow Claims Services. (T. 178). Plaintiff advised that his symptoms were worse with more pain

in his right leg with numbness causing his leg to "give out". (T. 178).   Upon examination, Dr. Nitka noted plaintiff had good strength, straight leg raising produced discomfort on the right side, decreased pin sensation in the right foot and normal reflexes. (T. 179).  Dr. Nitka suggested physical therapy and opined that plaintiff could do anything that would require him not to maintain a position for more than 20 minutes at a time and no lifting or bending. (T. 180).

George T. Cunningham, D.C.

On April 6, 2004, Dr. George Cunningham performed a chiropractic evaluation of plaintiff at the request of Arrow Claims Services. (T. 175).   Plaintiff complained of low back pain and occasional neck pain. (T. 175).  Upon examination, Dr. Cunningham found that plaintiff's range of motion in his cervical and lumbar spine was restricted. (T. 176).  Dr. Cunningham noted that straight leg raising was negative in a seated position and positive at 40 degrees on the left and 30 degrees on the right in a supine position. (T. 176).   Dr. Cunningham noted that he reviewed an MRI report dated March 11, 2004 (which was provided by plaintiff at the examination) and February 23, 2004 office notes from Dr. Pirro-Lombardi. (T. 176).   Dr. Cunningham diagnosed plaintiff with a lumbosacral sprain and an L5-S1 disc protrusion "per the patient's MRI scan". (T. 176).   Dr. Cunningham opined that plaintiff could return to light duty sedentary work and avoid any lifting over 15 pounds or repetitive forward flexion.  (T. 177).  In addition, Dr. Cunningham stated that plaintiff needed to be allowed to change his position from sitting to standing periodically as needed. (T. 177).

Philip T. Dontino, D.C.

On June 24, 2004, plaintiff appeared for a chiropractic examination by Dr. Philip Dontino at the request of Arrow Claims Services. (T. 191).  Plaintiff complained of constant low back pain

with intermittent neck pain. (T. 193).  Plaintiff advised that Lortab helped his pain.  (T. 193).

Upon examination, Dr. Dontino noted plaintiff had a normal gait and was able to mount and leave

the examining table without difficulty. (T. 194).   Dr. Dontino found plaintiff's range of motion in

his cervical and lumbar spine restricted, palpation present at the lumbar region more on the right,

thoracic testing unremarkable, straight leg raising positive at 10 degrees on right and 40 degrees

on the left. (T. 195).  Dr. Dontino diagnosed plaintiff with lumbar disc syndrome with right sided

S1 radiculopathy and a cervical strain. (T. 196).  Dr. Dontino opined that plaintiff could return to

work in a light duty capacity with a 15 pound lift limit and no repetitive bending or stooping with

the option to change positions throughout the day. (T, 196).

       <u>W. David Ferraraccio, M.D.</u>

       On July 27, 2004, plaintiff appeared for an orthopedic evaluation by Dr. Ferraraccio in

relation to plaintiff's No-Fault claim. (T. 211). Plaintiff presented complaints of pain in his low

back and right lower extremity. (T. 213).  Upon examination, Dr. Ferraraccio noted plaintiff could

not bend over to remove his jeans.  (T. 213).  Dr. Ferraraccio found plaintiff's back tender on

palpation at the lumbar spine with moderate spasm, flexion and extension limited to 10 -15

degrees in each direction with straight leg raising positive at 85-90 degrees on the left side in a

seated position and 45-50 degrees on the right side.  (T. 214).   Dr. Ferraraccio diagnosed plaintiff

with a herniated disc at L5-S1 with probable lumbar radiculopathy. (T. 211).  Dr. Ferraraccio

opined that plaintiff was disabled and could not return to work. (T. 212).

**C.**    **Residual Functional Capacity Assessment**

       The record contains a physical residual functional capacity assessment completed by

"DDS Nardis" on September 27, 2004 at the request of the agency. (T. 216).  The evaluator found

that plaintiff could occasionally lift and/or carry 10 pounds; frequently lift and/or carry less than 10 pounds; stand and/or walk for 2 hours in an 8 hour workday; and sit for 6 hours in an 8 hour workday. (T. 217).  The analyst noted no manipulative, visual, communicative or environmental limitations. (T. 218-219).

## IV.    ADMINISTRATIVE LAW JUDGE'S DECISION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities."  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

In this case, the ALJ found at step one that plaintiff had been working on a full-time basis since April 18, 2005 as a truck mechanic and that this work was substantial gainful activity. (T. 16).  Therefore, the ALJ concluded that plaintiff has not been disabled since April 18, 2005. (T. 16).  The ALJ found that plaintiff did not work between February 11, 2004 and April 17, 2005

17

and therefore the sequential evaluation "must continue to determine whether the claimant was disabled during that period". (T. 16). At step two, the ALJ concluded that plaintiff's disc herniation at L5-S1 with right S1 radiculopathy was a "severe" impairment. (T. 16). At the third step of the analysis, the ALJ determined that plaintiff's impairment did not meet or medically equal the severity of any impairment listed in Appendix 1 of the Regulations. (T. 16-17). At the fourth step, the ALJ found that between February 11, 2004 and April 17, 2005, plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary exertional level that does not require repetitive bending. (T. 18). Accordingly, the ALJ found that between February 11, 2004 and April 18, 2005, plaintiff was unable to perform any of his past relevant work which consisted of jobs as a truck driver and truck mechanic. (T. 19). Relying on the medical-vocational guidelines ("the grids") set forth in the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy between February 11, 2004 and April 18, 2005. (T. 20). Therefore, the ALJ concluded that plaintiff was not under a disability as defined by the Act. (T. 20).

## V.     DISCUSSION

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Plaintiff argues that: (1) the ALJ did not properly consider plaintiff's pain; (2) the ALJ

failed to properly apply the treating physician rule to the opinions of Dr. Goriganti and Dr. Silverstein; and (3) the ALJ improperly relied upon the opinions of consulting examiners. Plaintiff argues that based upon the "persuasive proof of disability" in the record, remand would not serve any purpose and therefore, a reversal and award of benefits was appropriate.  (Dkt. No. 8).

**A.      Plaintiff's Complaints of Pain**

Plaintiff argues that the ALJ did not properly consider plaintiff's pain.[17]  (Dkt. No. 8, p. 13).   The Commissioner claims that the ALJ properly concluded that plaintiff's allegations were not fully credible. (Dkt. No.11, p. 8).

When the evidence demonstrates a medically determinable impairment, "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence[.]"  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption."  *Casino-Ortiz v. Astrue*, 2007 WL 2745704, at *11, n. 21 (S.D.N.Y. 2007) (citing 20 C.F.R. § 404.1529(c)(2)) .  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with her pain is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to

---

[17] Plaintiff makes only a general objection ALJ's assessment of plaintiff's credibility.  Plaintiff's brief is devoid of any specific contentions.

relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her neck and back pain are consistent with the objective medical and other evidence.  *See* Social Security Ruling 96-7p, 1996 WL 374186, at *2.

The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and "to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant."  *Marcus*, 615 F.2d at 27; *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding that an ALJ is in a better position to decide credibility).  When rejecting subjective complaints of pain, an ALJ must do so "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief[.]" *Brandon v. Bowen*, 666 F. Supp 604, 608 (S.D.N.Y. 1987).  If the Commissioner's findings are supported by substantial evidence, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain."  *Aponte v. Secretary, Dept. of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984).  A reviewing court's role is merely to determine whether substantial evidence supports the ALJ's decision to discount a claimant's subjective complaints. *Aponte*, 728 F.2d at 591 (quotations and other citations omitted).

In this matter, the ALJ found that plaintiff's subjective complaints were "partially credible".  (T. 20).  The ALJ stated:

> Treatment notes from June 2004 state that the claimant grudgingly admitted that his pain medication was helpful.  The claimant also testified that he has been helped by a back brace.  The claimant testified that he plays games with his children.  As noted earlier, the claimant is now performing substantial gainful activity, and he has not missed any days of work because of his back problem.  In light of these factors, the undersigned concludes that the claimant's subjective complaints are partially

credible.  He is limited, but not disabled, by his pain and other symptoms. (T. 18).

Having reviewed the record, this Court is satisfied that the ALJ utilized the proper legal standards in her analysis of plaintiff's complaints of pain.  Further, the Court finds that there is substantial evidence to support the ALJ's decision to discredit plaintiff's complaints of disabling pain.  The ALJ referenced plaintiff's testimony regarding his daily activities and current return to work.  (T. 18).  In addition to the testimony cited by the ALJ, plaintiff further stated that he is able to drive his children to school and drive his wife to work, fold laundry, shop online, shop in stores and attend his doctor's appointments and therapy sessions. (T. 51).  The ALJ properly assessed the remaining factors enumerated in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi) and noted the successful treatment of plaintiff's pain with his back brace and discussed plaintiff's medications.  (T. 188).

The plaintiff argues that his work history entitles him to substantial credibility. (Dkt. No. 8, p. 13).  SSA regulations provide that the fact-finder "will consider all of the evidence presented, including information about your prior work record." 20 C.F.R. § 416.929(c)(3).  While "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work ... [w]ork history [ ] is but one of many factors to be utilized by the ALJ in determining credibility." *Marine v. Barnhart*, 2003 WL 22434094, at *4 (S.D.N.Y. 2003).  Although a plaintiff with a long work history is entitled to "substantial credibility", the Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *Howe-Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007).

In this case, taken as a whole, the record supports the ALJ's determination.  The Court

finds that the ALJ employed the proper legal standards in assessing the credibility of plaintiff's complaints of consistent and disabling pain.  The decision contains enough detail to enable the Court to discern the reasons on which the ALJ relied in discounting plaintiff's allegations of disabling pain.

**B.      Treating Physician Rule**

Plaintiff argues that the ALJ improperly rejected the opinions of Drs. Goriganti and Silverstein. (Dkt. No. 8, p. 9).  The Commissioner contends that the opinions expressed by Drs. Goriganti and Silverstein were not entitled to controlling weight because they were inconsistent with substantial evidence and plaintiff's own actions. (Dkt. No. 11, p. ).

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2) (2001); *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993).  The ALJ is required to accord special evidentiary weight to the opinion of the treating physician, as long as the treating physician's opinion is supported by medically acceptable techniques, results from frequent examinations, and is supported by the administrative record.  *Schnetzler v. Astrue*, 533 F.Supp.2d 272, 285 (E.D.N.Y. 2008).   An ALJ may refuse to consider the treating physician's opinion controlling if he is able to set forth good reason for doing so.  *Barnett v. Apfel*, 13 F. Supp.2d 312, 316 (N.D.N.Y. 1998).

When an ALJ refuses to assign a treating physician's opinion controlling weight, he must consider a number of factors to determine the appropriate weight to assign, including:

(i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's

opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

20 C.F.R. 404.1527(d)(2). The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Stevens v. Barnhart*, 473 F.Supp.2d 357, 362 (N.D.N.Y. 2007); *see also Otts v. Comm'r of Social Sec.*, 249 Fed.Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject an opinion of a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record"). Similarly, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported. 20 C.F.R. § 404.1527(d)(3), 416.927 (d)(3); *see also Stevens*, 473 F.Supp.2d at 362; *see also Cruz v. Barnhart*, 2006 WL 1228581. at *11 (S.D.N.Y. 2006) (holding that the Commissioner is not required to give controlling weight to a treating physician whose opinion is not supported by treating physician's own records). An opinion that is not supported by recent clinical evidence (no recent X-ray, CT scan or MRI) is not entitled to controlling weight. *See Ceballos v. Apfel*, 2001 WL 199410, at *9 (S.D.N.Y. 2001).

In this case, the plaintiff argues that the opinions of Dr. Goriganti and Dr. Silverstein are supported by objective medical evidence. As noted by the ALJ, the functional evaluations of Drs. Goriganti and Silverstein are substantially similar. (T. 17). Drs. Goriganti and Silverstein opined

that plaintiff could occasionally and frequently lift and/or carry less than 10 pounds; stand and/or walk less than 2 hours in an 8 hour workday; and could sit but must periodically alternate between sitting and standing to relive pain. (T. 222-223; 227-228). The ALJ concluded that the opinions "cannot be given significant weight because they describe the claimant as being unable to perform the activities he is now doing on a daily basis in the course of his work". (T. 17). The ALJ further "specifically reject[ed]" the conclusions of Drs. Goriganti and Silverstein with regard to the "sit/stand option" noting that the opinions were inconsistent with the opinions expressed by other treating and examining physicians. (T. 18). After a thorough review of the transcript, the Court finds that the ALJ afforded the appropriate weight to the opinions expressed by Drs. Goriganti and Silverstein as the opinions are not supported by substantial evidence.

The opinions of Drs. Goriganti and Silverstein are inconsistent with the conclusions and clinical findings documented in the doctors' own treatment records. (T. 223). Dr. Goriganti treated the plaintiff on two occasions. During the first visit, Dr. Goriganti found plaintiff to be "comfortable in a seated position" and "in no apparent distress". (T. 198). Dr. Goriganti noted that the results of the MRI films and electrodiagnostic studies were "not available" for review. (T. 198). In July 2004, during the second visit, Dr. Goriganti noted plaintiff had "significant improvement with his pain". (T. 200). Dr. Goriganti administered an epidural injection, and noted that plaintiff tolerated the procedure and ambulated well upon discharge. (T. 200). There is no mention in Dr. Goriganti's July 2004 records that the results of any objective findings were ever received or reviewed. Further, there is no evidence that Dr. Goriganti treated plaintiff after administering the injection on July 13, 2004 and no record to indicate that Dr. Goriganti's March

16, 2005 opinions were based on a recent examination of plaintiff.[18]   Although deference should be accorded to Dr. Goriganti's opinion because he is plaintiff's treating physician, the unexplained gap between Dr. Goriganti's most recent examination of plaintiff and the preparation of the March 2005 report - suggest that such deference would not be appropriate.  *See Williams v. Ritchie*, 139 F.Supp.2d 330, 338 -339 (E.D.N.Y. 2001).  The limitations and opinions expressed by Dr. Goriganti in the March 2005 Statement are clearly not supported by Dr. Goriganti's clinical findings or treatment notes.

Dr. Silverstein's conclusions are also unsupported by the doctor's treatment notes.  Dr. Silverstein examined plaintiff on several occasions prior to providing his opinion, however, Dr. Silverstein's treatment notes are extremely brief and contain nothing more than cursory conclusions unsupported by objective testing. *See Alvarado v. Barnhart*, 432 F.Supp.2d 312, 321 (W.D.N.Y. 2006) (internal citation omitted) (holding that the treating physician's opinions must be discounted as they were too brief and conclusory and wholly unsupported by any medical evidence, treatment notes, specific findings, or clinical).  Moreover, in some instances, Dr. Silverstein's notes merely repeat plaintiff's complaints of pain. *See Filoramo v. Apfel*, 1999 WL 1011942, at *7 (E.D.N.Y. 1999) (holding that the ALJ justifiably concluded that treating physician did not support his restrictive diagnoses of the plaintiff with any objective data).

The opinions of Drs. Goriganti and Silverstein are also inconsistent with the opinions of plaintiff's surgeon, Dr. Wulff.  Plaintiff's most recent physical examination and treatment was with Dr. Wulff.   On April 5, 2005, less than one month after Dr. Goriganti and Dr. Silverstein provided their opinions,  Dr. Wulff found that plaintiff walked and stood comfortably, exhibited

---

[18] The Medical Source Statement was completed eight months after plaintiff's last examination by Dr. Goriganti.

negative straight leg raising and easily climbed on the examining table. (T. 298).  At the completion of that examination, Dr. Wulff opined that plaintiff could return to work "without restriction". (T. 298).

The restrictions and limitations placed upon plaintiff's activities by Drs. Goriganti and Silverstein are in conflict with plaintiff's testimony regarding his daily activities.  During the hearing, plaintiff testified that he could lift five or ten pounds. (T. 311).  Plaintiff also testified that at his current job, he changed tail lights, brakes and tires, fixed the roofs and performed inspections of tractor trailers.  (T. 311).   Plaintiff also testified that he will spend "close to an hour on a creeper" under a tractor trailer to "check everything". (T. 312).   Plaintiff also testified that he had not missed one day from work since returning on April 18, 2005. (T. 312).  Based upon plaintiff's own testimony, the ALJ properly declined to afford controlling weight to the opinions of Drs. Goriganti and Silverstein.  *See Cruz v. Barnhart*, 2006 WL 1228581, at *13 (S.D.N.Y. 2006) (holding that a finding of incapacity was inconsistent with the plaintiff's own conduct); *see also Coyle v. Apfel*, 66 F.Supp.2d 368, 377-378 (N.D.N.Y. 1999) (holding that ALJ properly refused to afford controlling weight to treating physicians opinion that was inconsistent with the medical evidence and the evidence of plaintiff's daily activities).

The ALJ properly evaluated the factors and identified the valid reasons not to give controlling weight to the opinions of Drs. Goriganti and Silverstein.  The Court finds that substantial evidence exists to support the ALJ's determination to assign less than controlling weight to the opinions expressed in March 2005 by Drs. Goriganti and Silverstein.

**C.      Reliance Upon Opinions of Consulting Examiners**

Plaintiff asserts that the ALJ improperly relied upon the opinions expressed by the consultative examiners, Drs. Cally and Cunningham.[19] (Dkt. No. 8, p. 7-8).  A non-examining source's opinion, including the opinions of state agency medical consultants and medical experts, will be given less weight than an examining source's opinion. 20 C.F.R. § 416.927(d)(1); *see also Pogozelski v. Barnhart*, 2004 WL 1146059, at *13 (E.D.N.Y. 2004) (opinions of non-examining sources entitled to even less weight than an examining consultative physician's opinion).  An opinion, which is based solely on a single examination of plaintiff, deserves limited weight.  *See Crespo v. Apfel*, 1999 WL 144483, at *7 (S.D.N.Y. 1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day.").  Furthermore, "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the diagnosis of a treating physician. *Garzona v. Apfel*, 1998 WL 643645, at *1 (E.D.N.Y. 1998).

When an ALJ's decision is not fully favorable to a claimant, he must provide specific reasons for the weight given to each treating source's medical opinion, supported by the evidence in the case record, and must state the reasons for that weight.  *See* Social Security Ruling ("S.S.R.") 96-2p; *see also Richardson v. Barnhart*, 443 F.Supp.2d 411, 424 (W.D.N.Y. 2006) (holding that even if the ALJ had properly discounted treating physician's medical opinion, he would have still failed to properly explain the weight he gave to other physician opinions in the record); *see also Lunan v. Apfel*, 2000 WL 287988, at *5 (N.D.N.Y. 2000) (holding that remand

---

[19] Plaintiff does not object to the weight assigned by the ALJ to the state agency residual functional capacity assessment.

was necessary because the ALJ did not discuss the weight that she assigned or the specific reasons for assigning such weight to the opinions of the treating physicians, as she was required to do pursuant to § 404.1527(d)(2)).

In this case, the ALJ concluded that plaintiff had the RFC to perform "work at the sedentary exertional level that does not require repetitive bending". (T. 18).  The ALJ also found that the plaintiff "does not require shifting between sitting and standing more frequently than can be accommodated by normal workday breaks". (T. 18).  In the context of this determination, the ALJ specifically assigned "some weight" to Dr. Cunningham's opinion.  The ALJ stated:

> Dr. Cunningham concluded that claimant should avoid lifting over 15 pounds and avoid repetitive forward flexion.  Dr. Cunningham also stated that the claimant should be allowed to change his position from sitting to standing as needed.  (T. 17-18).

The ALJ further noted that Dr. Cunningham found that "plaintiff could perform a sedentary job". (T. 18).  The ALJ also briefly mentioned Dr. Cally's March 2004 examination of plaintiff stating: "[t]he report of an examination by Dr. Cally in March 2004 states that the claimant's pain varies from day-to-day". (T. 18).   The ALJ took note of Dr. Cambareri's suggestion that plaintiff pursue vocational rehabilitation and cited to Dr. Wulff's April 2005 notation that plaintiff could return to work.  (T. 18).   The ALJ did not provide any further summary of the medical evidence and did not assign weight to the opinions of any treating or examining physician other than Dr. Cunningham.

Upon review of the entire record, it is unclear on what specific evidence the ALJ relied in making the RFC determination.  The ALJ cites to the reports and opinions of Dr. Cally and Dr. Cunningham.  However, Dr. Cally did not review any of plaintiff's medical records. (T. 167).  Similarly, Dr. Cunningham's report indicates that he reviewed only an MRI report (which was

28

provided by plaintiff) and one office note from Dr. Pirro-Lombardi dated February 2004. (T. 176).  To the extent that the ALJ's determination was based upon the findings of Drs. Cally or Cunningham, it was legally erroneous.  *See McKenna v. Chater*, 893 F.Supp. 163, 170 -171 (E.D.N.Y. 1995); *see also Boyd v. Apfel*, 1999 WL 1129055, at *4 (E.D.N.Y. 1999) (the opinions of physicians who neither examine the claimant nor review the entire medical record are entitled to little weight).

The ALJ's selective reliance on only portions of Dr. Cunningham's opinions further undermines the RFC analysis. The ALJ seemingly affords weight to Dr. Cunningham's opinion that plaintiff can perform sedentary work. (T. 18).  However, the ALJ clearly rejects Dr. Cunningham's opinion that plaintiff should be allowed to change his position from sitting to standing. (T. 18).  The ALJ failed to explain how she resolved this inconsistency.  *Rivera v. Apfel*, 1999 WL 138920, at *9 (S.D.N.Y. 1999) *see also Watson v. Callahan*, 1997 WL 746455, at *13 (S.D.N.Y. 1997) ("To allow the ALJ to rely on one portion of a doctor's report in support of his finding of no disability but then discount another portion of the very same report ... would be inconsistent. The ALJ cannot have it both ways.").

Moreover, the ALJ offered no explanation or discussion regarding the weight afforded to any of the plaintiff's other treating physicians including Dr. Cambareri, Dr. Schaeffer and Dr. Wulff.  Further, the ALJ failed to discuss the weight assigned to the opinions of other consulting physicians including Drs. Nitka, Dontino and Ferraraccio.  The ALJ did not recite or apply any of the factors set forth at 20 C.F.R. § 404.1527(d)(2) in evaluating each opinion. Without the benefit of such analysis, it is impossible to determine whether the ALJ's decision is supported by substantial evidence.

The Court finds that the ALJ applied an incorrect legal standard in failing to assign weight to the opinions of plaintiff's treating physicians and to some of the consulting examiners.  The ALJ did not specify the actual amount of weight, if any, that she was according to each. Therefore, the Court will remand this matter to the Commissioner for further consideration, rather than reverse the decision in its entirety.  *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000) ("Upon a finding that an administrative record is incomplete or that an ALJ has applied an improper legal standard, we generally vacate and instruct the district court to remand the matter to the Commissioner for further consideration.").

## VI.  CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED** that the decision denying disability benefits is **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to 42 U.S.C. § 405(g) for further proceedings consistent with this Order, and it is further

**ORDERED** that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded, as such, any appeal taken from this Order will be to the Court of Appeals for the Second Circuit; and it is further

**ORDERED** that the Clerk of Court enter judgment in this case.

**IT IS SO ORDERED.**

Dated:  September 30, 2008
        Syracuse, New York

Norman A. Mordue
Chief United States District Court Judge